UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

|  |  |  |
|---|---|---|
| KEITH W. DEWITT, SR., | : | Case No. 3:16-cv-00021 |
| Plaintiff, | : | District Judge Thomas M. Rose |
|  | : | Magistrate Judge Sharon L. Ovington |
| vs. | : |  |
| COMMISSIONER OF THE INTERNAL REVENUE SERVICE, | : |  |
| Defendant. | : |  |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Keith W. DeWitt, Sr. is an inmate at the Edgefield Federal Correctional Institution in Edgefield, South Carolina. He brings this case seeking copies of certain tax documents from the Internal Revenue Service. He asserts in his *pro se* Complaint that he is entitled to receive the tax documents he seeks from the IRS under the Freedom of Information Act (FOIA) and the Privacy Act.

The case is presently before the Court upon the Government's Motion to Dismiss, or Alternatively for Summary Judgment (Doc. #28), Plaintiff's responsive filings (Doc. #s 32, 36), the Government's Reply (Doc. #37), and the record as a whole. Both the Government's Motion and Plaintiff's responses arise in the context of his transfer from one federal institution to another. This makes the procedural background somewhat

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

unique.

I.	**Procedural Background**

The Government's certificate of service attached to its Motion to Dismiss, or Alternatively for Summary Judgment states that it served Plaintiff with a copy of its Motion at the Bennettsville Federal Correctional Institution. This was Plaintiff's correct address of record on the date the Government filed its Motion.

After the Government filed its Motion, the Court notified Plaintiff about the Motion and the need for him to timely respond. (Doc. #29). Providing a pro se plaintiff, like Plaintiff, with such Notice is a normal procedure designed to help ensure the plaintiff understands the need for his or her response to a dispositive motion, the deadline the response is due, and the possible consequence of not responding. *See id*. The Notice was sent Plaintiff's then-current address of record at the Bennettsville Federal Correctional Institution. But the postal service returned it to the Clerk of Court marked, "return to sender, attempted—not known, unable to forward." (Doc. #30).

The Court next issued a Show Cause Order to Plaintiff because he had not kept the Court apprised of his current address. The Court directed Plaintiff to show cause why his case should not be dismissed due to his lack of prosecution. (Doc. #31). Inexplicably (given the previous return of mail sent to Plaintiff), the Show Cause Order was not returned by the postal service. Plaintiff instead received a copy of the Order to Show Cause and responded by informing the Court that he had sent a letter to the Clerk of Court about his pending transfer to another institution. (Doc. #32). (He did not provide a copy of that letter, and no such letter appears in the record.) Plaintiff promised to inform

the Clerk of his updated address upon his arrival at his new place of incarceration. He also reported that he "is position to move to final disposition of this case." *Id*.

Six weeks went by with no further information from Plaintiff and no response by him to the Government's pending dispositive Motion. Because his transfer to another institution was looming, the Court ordered the Government to serve its Motion upon Plaintiff at his present address of record, wherever that might be. (Doc. #33).

At some point in time, Plaintiff was transferred to the Edgefield Correctional Institution. On September 17, 2019, the Government filed a Notice of Compliance with Order Regarding Service, certifying that it had served a copy of its Motion (and all attached documents) upon Plaintiff at the Edgefield Correctional Institution. (Doc. #34). The Government attached to its Notice a signed registered-mail receipt. *Id*. (Exhibit A). The Court thereafter ordered Plaintiff to file his response, if any, to the Government's Motion to Dismiss, or Alternatively for Summary Judgment by January 3, 2020. (Doc. #35).

Plaintiff timely responded. He stated that he had not yet received Defendant's Motion. He then proposed the following:

> In the alternative, Plaintiff would move the Court to dismiss, and in doing so only request the Court Order the Defendant to produce all original correspondence documents generated relating to the first [Government] initiated search number.
>
> Upon the production of those documents, Plaintiff moves the Court for the dismissal of this case.
>
> Further, Plaintiff would inform the honorable Court that [he] is currently in the process of transferring to a new institution, and would request the Court

> to stay its decision until after [the Clerk] has been notified of Plaintiff's mail address.

(Doc. #36, *PageID* #195).

The Government responded with a Reply in Support of its Motion to Dismiss, or Alternatively for Summary Judgment. (Doc. #37). The Government seeks a ruling on the merits of its Motion or Alternative Motion. The Government opposes Plaintiff's request to stay the case based on its contention that the Court lacks jurisdiction over this case. This argument arises from (1) its assertion in its original Motion that exhaustion is a threshold requirement in FOIA cases, and (2) its footnote asserting that Plaintiff's "claim fails whether or not the exhaustion of administrative remedies is jurisdictional, or merely jurisprudential." (Doc. #28, *PageID* #161 n.2). The Government also argues that a stay of this case is unwarranted because Plaintiff "has already filed a response to the pending motion …." *Id*. at 199.

Other than Plaintiff's statement, the record contains no indication that his transfer to another institution is forthcoming.

## II.     Summary Judgment Standards

Summary judgment is available to a moving party who is able to "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bear[s] the burden of showing the absence of a genuine issue of material fact as to at least one essential element of [Defendant's] claim." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)). Once the moving party

satisfies its burden, the nonmoving party may not rest on its pleadings but "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *see Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no *genuine* issue of *material* fact." *Moore*, 2 F.3d at 699 (citing *Liberty Lobby, Inc.*, 477 U.S. at 247-48).

To resolve a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted). "'[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Liberty Lobby, Inc.,* 477 U.S. at 252).

"The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. (citations omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)

### III.    Exhaustion

"The FOIA generally provides that every federal agency shall promptly make available upon request records reasonably described. Under the Act, an agency may not

withhold or limit the availability of any record, unless one of the FOIA's specific exceptions applies." *Rugiero v. U.S. Dept. of Justice*, 257 F.3d 534, 543 (6th Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A)).

An agency responding to a FOIA request must, to the extent that it is unable to turn over properly requested documents, "show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information.'" *Davidson v. Federal Bureau of Prisons*, No. 17-5429, 2017 WL 8897005, at *4 (6th Cir. 2017) (quoting, in part, *Kohake v. Dep't of Treasury*, 630 F. App'x 583, 587 (6th Cir. 2015) (quoting *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011)). "An administrative agency may establish the adequacy of its search through sworn documents that provide reasonable details concerning the scope of its search. An agency's actions are entitled to a presumption of good faith except where there is evidence of bad faith in the handling of a FOIA request." *Id.* (citing *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994)) (internal punctuation and citation omitted).

The Government contends there is no genuine dispute over the material fact that Plaintiff has not exhausted his administrative remedies, and even if he has, the IRS conducted a reasonable search for records and is not withholding any documents from Plaintiff.

> "Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). Failure to exhaust is not jurisdictional under FOIA, but it "precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Wilbur v. C.I.A.*, 355 F.3d 675,

6

677 (D.C. Cir. 2004) (internal quotation marks and citations omitted). *Khine v. United States Dep't of Homeland Sec.*, 943 F.3d 959, 964 (D.C. Cir. 2019).

"The exhaustion requirement is satisfied when either: (1) the individual submits a FOIA request and administratively appeals any adverse determinations, or (2) the agency fails to respond to a FOIA request within the time limits articulated in the Act." *Kinman v. United States*, No. 1:16cv329, 2016 WL 7165986, at *3 (S.D. Ohio 2016) (quoting *Fields v. Internal Revenue Service*, No. 12-14753, 2013 WL 3353921, at *4 (E.D Mich. 2013) and citing 5 U.S.C. § 552(a)(6)(C)(i)), Report & Recommendation adopted, No. 1:16cv329 (Doc. #18) (Jan. 11, 2017).

Plaintiff alleges in his Complaint that in approximately November 2014, he submitted a request to the "I.R.S. Ravis Team, Stop 6705 P-6 P.O. Bos 145500, for any and all 1099-C forms bearing [his] name and/or Social Security Number." (Doc. #1, *PageID* #2). He received a response from the IRS informing him that the search for 1099-C forms bearing Plaintiff's name was complete. Plaintiff sent two follow-up letters asking why his requested tax documents had not been released. He further asserts in his Complaint that his request constituted a request under FOIA and the Privacy Act, and that the IRS has violated FOIA and the Privacy Act by improperly withholding his tax records that are responsive to his requests. *Id*. at 2-3.

In support of its Alternative Motion for Summary Judgment, the Government relies on the Declaration of Deborah Lambert-Dean. She is an attorney in Branch 6 of the IRS's Office of Chief Counsel (Procedure and Administration). She declares that her Declaration is based on her personal knowledge, and she swears to the truth of her

7

Declaration under the penalty of perjury.

Lambert-Dean states that she was assigned to assist the Department of Justice in this case, starting in November 2016. She has "been involved with attempting to ascertain the nature of any FOIA or Privacy Act requests [Plaintiff] may have submitted to the IRS as well as how the IRS may have processed any such requests." (Doc. #28, *PageID* #169, ¶4). She describes the information she found in IRS records as follows:

- After Plaintiff filed this case in early 2016, his case was assigned to attorney Gary Shuler. Shuler, in turn, asked Disclosure Specialist Carol Prim, in the IRS Office of Disclosure, to conduct a search to determine if Plaintiff had submitted any FOIA/Privacy Act requests to the IRS in or around 2014. *Id*. at *PageID* #170, ¶s 8-9.

- Prim searched the IRS's Automated Freedom of Information database and reported to Shuler, in December 2016, that "she had found no record of Disclosure having received a request from [P]laintiff in 2014." *Id*., ¶11. She further reported that the only request from Plaintiff was dated January 7, 2016, and that the IRS's Office of Disclosure received this request on January 27, 2016, fourteen days after Plaintiff's Complaint was filed in this case.[2] *Id*., ¶12.

- Lambert-Dean contacted the IRS Office of Appeal to determine if Plaintiff had submitted an appeal concerning the November 2014 request he describes in his Complaint. The resulting search of the A-FOIA database and the Appeals Centralized Database (which houses all FOIA appeals) revealed that Plaintiff had never filed an appeal with the Office of Appeals. *Id*. at *PageID* #171, ¶s 13-14.

- Lambert-Dean contacted Kathy Gibbs, the Manager of the RAVIS Team in Kansas City and provided her with a copy of Plaintiff's Complaint. Gibbs explained to Lambert-Dean that in general, when requests to the RAVIS Team by certain IRS forms—the ones Plaintiff appears to have used—the requests are processed and destroyed within 65 days of receipt. Gibbs never located a request from Plaintiff on these forms. *Id*. at *PageID* #172, ¶s 18-20.

---

[2]Plaintiff's signature on his Complaint is dated December 29, 2015.

- As to the two follow-up letters Plaintiff alleges (in his Complaint) that he sent to the RAVIS Team, Gibbs searched but did not find any. *Id*. at ¶22.

- In March 2017, Lambert-Dean contacted Sean O'Donnell, the IRS attorney assigned to this case. They discussed attempting to obtain the information they needed from Plaintiff to determine if the IRS has the information he wants. Lambert-Dean "suggested that we should ask Plaintiff to execute Form 8821, the form by which he could authorize [Plaintiff's] mother to receive his tax information and which requires that the taxpayer specify what type of tax information he wants and for what years…." *Id*. at *PageID* #173, ¶24. Lambert-Dean provided O'Donnell with a blank Form 8821. *Id*. at ¶25.

- O'Donnell sent the blank Form 8821 to Plaintiff. Plaintiff completed and signed it on May 6, 2017. He then sent it back to O'Donnell. This document indicates that Plaintiff seeks Forms 1099-C (Cancellation of Debt) and Forms 1096 (Debt) for tax years 1996 through 2015. Plaintiff authorized (in this same Form 8821) his mother to receive the information on his behalf. *Id*. at ¶25.

- On June 13, 2017, Lambert-Dean recontacted Gibbs and provided her with Plaintiff's completed and executed Form 8821. Lambert-Dean asked Gibbs to search for the information specified in Plaintiff's Form 8821. Gibbs responded two days later, telling Lambert-Dean that she had been unable to locate any Forms 1099 or 1096 that Plaintiff had identified in his Form 8821. *Id*. at ¶26.

The Government has attached as Exhibit B to Lambert-Dean's Declaration a copy of the Form 8821 Plaintiff completed and signed. *Id*., *PageID* #s 179-80.

By submitting Lambert-Dean's Declaration and relying on the information she detail within it, the Government has demonstrated the absence of a genuine issue concerning the above material facts. This satisfies the Government's initial burden at the summary-judgment stage. *See Laster*, 746 F.3d at 726.

In response, Plaintiff has not produced affirmative evidence conflicting with Lambert-Dean's Declaration or verifying the material allegations in his Complaint. He

9

claims in his Complaint that (1) he submitted a FOIA request to the IRS RAVIS team in Kansas City; (2) he received a responsive letter from the RAVIS Team stating that the its "[r]esearch was conducted under Integrated Data Retrieval System Number 372429 …," (Doc. #1, *PageID* #2); and (3) he sent two follow-up letters, "one by certified mail (no. 7014 3400 7596 9532), requesting why haven't the tax documents been released. *Id*. But at this stage of the case, without affirmative evidence supporting these allegations, there is no genuine dispute over the fact that the IRS has no documentation indicating that Plaintiff has exhausted his claim.

Plaintiff supports his Complaint, and presumably his opposition to summary judgment, with what appears to be a copy of the follow-up letter he allegedly sent to the RAVIS Team. *Id*. at *PageID* #s 2, 5-6. But the letter is unsigned, undated, and unsupported by the certified mail receipt he refers to in his Complaint. As a result, this document does not constitute affirmative evidence in support of his allegation that he sent two follow-up letters to the RAVIS Team, one by certified mail. This document is likewise insufficient to counter Lambert-Dean's explanation in her Declaration that she searched for Plaintiff's follow-up letter by using the certified mailing number he provided in his Complaint but did not locate it in the certified mail system because the system uses a 22-digit number and "the number plaintiff provided is only 20 digits …." (Doc. #28, *PageID* #172-73, ¶22).

In light of Plaintiff's failure to produce evidence sufficient to counter the information in Lambert-Dean's sworn Declaration, there is no genuine issue over the fact that the IRS's records do not contain any request for information he sent to the RAVIS

Team in or around November 2014 or his two alleged follow-up letters. Plaintiff has therefore not exhausted his administrative remedies concerning his FOIA or Privacy Act claims. *Cf. Banks v. Lappin*, 539 F.Supp.2d 228, 235 (D.D.C. 2008) ("The mailing of a FOIA request to a federal government agency does not constitute its receipt by the agency. Even if plaintiff had placed his FOIA requests to the BOP, Treasury, TSA and the Passport Office in the prison mailbox, nothing in the record establishes that these agencies actually received his requests.").

Even if non-exhaustion of administrative remedies is viewed as an affirmative defense upon which the Government bears the ultimate burden of proof, *see Carter v. United States*, No. 1:16cv530, 2017 WL 1044771, at *4 (S.D. Ohio 2017) (Barrett, D.J.), the Government is entitled to summary judgment because Lambert-Dean's sworn Declaration—which no evidence of record refutes—satisfies the Government's burden of establishing non-exhaustion.

Turning to Plaintiff's claim under the Privacy Act, the Government again argues that Plaintiff failed to exhaust his administrative remedies.

Although the Privacy Act does not contain an express statutory exhaustion requirement, "[c]ourts have … required individuals who seek access to records under the Act to exhaust administrative remedies consistent with the 'jurisprudential exhaustion' doctrine." *Kinman*, No. 1:16cv329, 2016 WL 7165986, at *3 (citing *Taylor v. U.S. Treasury Dept.*, 127 F.3d 470, 476 (5th Cir. 1997)) (other citations omitted).

Plaintiff's Complaint advances the same allegations concerning his efforts to exhaust his claims under both FOIA and the Privacy Act. The record, as explained

11

above, lacks affirmative evidence confirming the exhaustion allegations in his Complaint or refuting Lambert-Dean's Declaration. Consequently, there is no genuine dispute over his failure to exhaust his claim against the IRS under the Privacy Act.

But what about the letter Plaintiff sent to the IRS in January 2016? Gibbs reported to Lambert-Dean that her search of the IRS's Automated Freedom of Information database located a single request for information by Plaintiff. This request was dated January 7, 2016, and the IRS's Office of Disclosure received this request on January 27, 2016. (Doc. #28, *PageID* 170, #s 11-12). This does not help Plaintiff create a genuine issue over his efforts to exhaust his administrative remedies.

"'Exhaustion of administrative remedies is generally required before seeking judicial review' under FOIA, in order that an agency have 'an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision ….'" *Flippin v. U.S. Department of Interior*, Civil Action No. 19-1221, 2019 WL 7372669, at *2 (D.D.C. 2019) (quoting *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam), and *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). Plaintiff submitted his information request after he filed this case in December 2015. He signed his Complaint and Certificate of Service on December 29, 2016. *Id.* at *PageID* #s 3-4. Under the prison mailbox rule, this is considered the date on which he filed the present case. *Cf. Houston v. Lack*, 487 U.S. 266, 276 (1988) (notice of appeal timely filed by prisoner "at the time [he] delivered it to the prison authorities for forwarding to the court clerk."). Moreover, viewing the record in Plaintiff's favor, Plaintiff filed this case on January 13, 2016, the date the Clerk of Court received and

12

docketed his Complaint. This does not help Plaintiff because the IRS did not receive his FOIA/Privacy Act request until January 27, 2016, well after his Complaint was docketed by the Clerk. And, even if the IRS had received Plaintiff's January 27, 2016 request for information, his Complaint rests his FOIA and Privacy Act claims on his request, and the IRS's alleged FOIA/Privacy Act missteps, in 2014. Chronologically, his January 2016 request for information cannot serve as his alleged request in 2014 for information to which the IRS allegedly failed to respond. In other words, his request for information in January 2016 does not create a genuine issue of material fact over whether the IRS received his request in 2014 or over the IRS's actions or omissions in 2014.

Accordingly, there is no genuine issue of material fact concerning Plaintiff's failure to exhaust his administrative remedies.

## IV. Remaining Issues

In response to Plaintiff's request for information via his Form 8821, Lambert-Dean's asked Gibbs—remember, she works in the IRS's RAVIS unit in Kansas City—to search for the information he seeks. Gibbs searched for the information but was "unable to locate any Form 1099 or 1095 requested by [Plaintiff] on his Form 8821 dated May 6, 2017." (Doc. #28, *PageID* 174, ¶26). Lambert-Dean states, "The service is not withholding any records responsive to [Plaintiff's] Form 8821 request." *Id*.

The record lacks any evidence conflicting with Lambert-Dean's explanation. Plaintiff, moreover, does not point to or rely on any evidence conflicting with Lambert-Dean's sworn Declaration. There is consequently no genuine issue of material fact supporting a FOIA or Privacy Act claim based on the IRS's response to his request for

13

information in his Form 8821.

Lastly, Plaintiff maintains that he still has not received a copy of the Government's Motion to Dismiss, or Alternatively for Summary Judgment. (Doc. #36). The Government's attorney has filed a Notice of Complaint with Order Regarding Service, verifying that its Motion was served on Plaintiff at the Edgefield Correctional Institution—his current address of record. The Government has also provided a copy of the certified mail receipt confirming such service. (Doc. #34, *PageID* #192). And, although Plaintiff seeks a stay of this case until he is transferred to another institution and after he provides the Clerk of Court with is new address, a stay is unwarranted. Plaintiff has known since September 20, 2019, at the latest, of the need for him to respond to the Government's Motion. (Doc. #32). He acknowledged then that he was "in a position to move to final disposition of this case." *Id*. There is, moreover, no indication that Plaintiff will be prejudiced in the absence of a stay.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Government's Motion to Dismiss, or Alternatively for Summary Judgment (Doc. #28) be GRANTED and summary judgment be entered in the Government's favor and against Plaintiff; and

2. The case be terminated on the docket of the Court.

January 27, 2020                                        *s/Sharon L. Ovington*
                                                        Sharon L. Ovington
                                                        United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within FOURTEEN days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to SEVENTEEN days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within FOURTEEN days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).